UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUIDA L. JOHNSON,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>            Defendant. | Case No. 13-cv-04862-EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 22 |

Plaintiff Ouida L. Johnson ("Plaintiff") filed this suit under 42 U.S.C. § 405(g) seeking judicial review of the final decision denying her claim for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 400 et seq. Plaintiff subsequently moved for summary judgment, seeking reversal of the final decision of the Social Security Administration ("SSA"), or alternatively, remand of the case for further administrative proceedings. Specifically, Plaintiff contends that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because the record shows her mental residual functional capacity ("RFC") was more limited than the RFC assigned to her in the ALJ's decision, and because the ALJ erred in evaluating the vocational expert's testimony.

The parties have filed cross-motions for summary judgment. The Court ordered further briefing, which the parties timely filed on July 31, 2014. For the reasons stated in this Order, Plaintiff's Motion for Summary Judgment is granted in part and denied in part and Defendant's Cross-Motion for Summary Judgment is granted in part and denied in part.

**Factual Background**

    **A.    General Background**

    Plaintiff is an approximately 50 year old female who lives with her husband. Administrative Record ("A.R.") 21, 276. She last worked as an attendant and cashier at a 7-11 convenience store, but stopped working around February 2009. A.R. 68. Prior to that job, she spent about six years working at gas stations and convenience stores as an attendant and cashier. A.R. 69. Plaintiff has been treated for depression since at least 2007. A.R. 328, 424. Plaintiff's depression has become worse in recent years, due to increased physical pain and being unable to work. A.R. 90-2. In September 2005, Plaintiff injured her back at work, and has suffered from back and hip pain ever since. A.R. 68, 73. Just prior to quitting work in 2009, Plaintiff's treating physician told her to stop working due to her ongoing physical pain and depression. A.R. 75.

    **B.    Medical History**

    Because Plaintiff appeals only the ALJ's decision about her mental RFC, the following section addresses those physicians who evaluated Plaintiff's mental health and abilities.

        **1.    Treating Physician**

    Dr. Laurie Cederbert was Plaintiff's treating physician from at least January 2007 to July 2009. A.R. 328, 424. Among other things, Dr. Cederbert treated Plaintiff for depression in 2007-2009 by prescribing Zoloft and then Celexa (Citalophram). A.R. 303, 335. Plaintiff has not received any mental health counseling or therapy because she does not have health insurance. A.R. 90. Plaintiff does not rely on her treating physician's diagnosis in this case.

        **2.    Consulting Physicians**

            **a.    Examining Physician**

    Plaintiff underwent a consultative psychiatric exam by Dr. Les Kalman on June 11, 2009. A.R. 394. She reported that she had experienced depression for years. Her medical problems, however, had increased her feelings of confusion, stress, frustration, and uselessness, as well as caused problems in her marriage. A.R. 394. She also stated that her depression could be related to menopause because her mother experienced depression when she went through menopause. A.R. 394.

Based on his examination, Dr. Kalman found that Plaintiff had a history of depression and that her more recent medical problems had made her depression worse. A.R. 394. Dr. Kalman remarked that Plaintiff's form of thought was logical and goal-oriented, she had close friends, and got along with her family. A.R. 394. He also stated that she managed her own transportation, paid her own bills, and did some cooking, but did not do her own shopping or housekeeping. A.R. 394.

Dr. Kalman diagnosed Plaintiff with an "adjustment disorder depressed secondary to medical condition" and opined that she would not improve significantly in the next year unless her physical health improved. A.R. 396. He concluded that Plaintiff was able to relate with supervisors and co-workers, able to deal with the public, able to understand and carry out simple one or two step job instructions, able to maintain attention and concentration, and psychiatrically able to withstand stress and pressures associated with daily work activities. A.R. 394.

### b.  Review Physician

On July 9, 2009, Dr. V. Meenakshi completed a mental residual functional capacity ("RFC") assessment and a psychiatric review technique for Plaintiff. A.R. 410, 413. In his RFC assessment, Dr. Meenakshi concluded that Plaintiff was able to complete one-two step instructions, maintain concentration/attention in two-hour increments, interact with co-workers, the public, and supervisors, and withstand the stresses of a normal work day. A.R. 410. He specifically reported that Plaintiff was "moderately limited" in her ability to carry out detailed instructions and "not significantly limited" in her ability to carry out very short and simple instructions. A.R. 410. Dr. Meenakshi noted that Plaintiff stated that she experienced depression due to ongoing medical problems and was taking Celexa for treatment of her depression. Id. He also noted that she had previously worked as a cashier for many years, had an eleventh grade education, ran her own errands, provided care for a child, and cooked. Id.

Dr. Meenakshi assessed whether Plaintiff's mental condition met listing 12.04 of the diagnostic criteria in 20 C.F.R. Part 404. He determined that Plaintiff's medical disposition was based on an affective disorder. A.R. 413. He found that Plaintiff had a medically determinable impairment, namely "adjustment disorder depressed, dysthymia," but that the impairment did not

3

1  precisely satisfy listing 12.04.  A.R. 416.  Dr. Meenakshi also determined that in the Paragraph B
2  criteria of the C.F.R. listings, Plaintiff had moderate restrictions of activities of daily living, mild
3  difficulties in maintaining social functioning, moderate difficulties in maintaining concentration,
4  persistence, or pace, and no repeated episodes of decompensation of an extended duration.  A.R.
5  421. He additionally stated that Plaintiff was capable of completing simple tasks.  A.R. 423.  He
6  concluded that the evidence did not establish the presence of paragraph C criteria.  A.R. 422.

### 3.    Third-Party Function Report

8  Plaintiff's husband completed a third-party function report on April 20, 2009.  A.R. 249.
9  He stated that Plaintiff could pay attention as long as she needed to and that she followed written
10 and spoken instructions very well.  A.R. 254.  The report described Plaintiff's daily activities and
11 noted that due to her back problems, Plaintiff needed help getting dressed, experienced insomnia,
12 and no longer could participate in physical activities she used to enjoy.  A.R. 250, 253.

**Procedural History**

14 Plaintiff applied for disability benefits on April 8, 2009, claiming that she became disabled
15 on February 4, 2009.  A.R. 224.  In her disability report, Plaintiff stated that she was unable to
16 work due to lower back and hip problems.  A.R. 258.  The SSA denied Plaintiff's application
17 initially and on reconsideration.  A.R. 128-32, 136-41.  Plaintiff requested a de novo hearing
18 before an ALJ, and one was held on July 9, 2010.  A.R. 142, 28.  On August 27, 2010, the ALJ
19 issued a decision finding that Plaintiff was not disabled because she retained the RFC to do her
20 past work as a telemarketer.  A.R. 104-22.

21 Plaintiff then filed a request for review with the Appeals Council and her request was
22 granted.  A.R. 186-89, 123-27.  The Appeals Council vacated the ALJ decision from August 27,
23 2010 and remanded the case to an ALJ for a new hearing on the grounds that the first hearing
24 decision did not properly evaluate the evidence about Plaintiff's mental health RFC, the doctors'
25 opinions in the record, and whether the telemarketer job met the definition of substantial gainful
26 activity.  A.R. 124-25.

27 The second ALJ hearing occurred on June 26, 2012.  A.R. 11.  The ALJ found that
28 Plaintiff was not disabled, concluding that she had not retained the RFC to do her past work, but

that she had retained the RFC to do substantial work and could perform a significant number of jobs that existed in the national economy. A.R. 11-22. Plaintiff filed a request for review with the Appeals Council. A.R. 5. The Appeals Council denied the request for review, making that decision the final decision of the SSA Commissioner. A.R. 1.

**The June 26, 2012 Hearing**

### A.     Plaintiff

Plaintiff testified briefly regarding her mental health. She stated that she had been taking citalopram for depression for four years. A.R. 90. She did not receive any mental health counseling or therapy because she had no health insurance and could not afford to pay out of pocket. A.R. 90-1. She testified that her medication helped her symptoms of depression. A.R. 91. Her symptoms included stress, poor self-esteem, and a feeling of "being absent-minded." A.R. 91. She stated that her depression interfered with her ability to focus and concentrate. Id. She did not suffer from depression when she worked as a cashier. A.R. 91-2. Her depression began once she stopped working. A.R. 92.

When questioned by her attorney about her past work, Plaintiff testified that she most recently worked at a convenience store as a cashier for eight months, but that she quit that job in February 2009. A.R. 2. Prior to that job, she spent about six years working at other convenience stores and at a gas station working the register, cleaning the store and stocking shelves. A.R. 69-70. She also stated that she worked about four hours a week at a telemarketing job, which lasted about three months. A.R. 71. She testified that the telemarketing job required typing skills, which she did not have, but that she was allowed her to write by hand while she worked there. A.R. 72.

### B.     Vocational Expert

Vocational expert Lynda Berkley testified at the hearing. A.R. 98. She testified that based on her review of Plaintiff's work background, her prior jobs included apartment resident-manager, home cleaner, retail cashier, gas station attendant, fast foods worker, and telemarketer. A.R. 97-8. The ALJ described a hypothetical person based on someone with Plaintiff's age, education, work background, and limitations consisting of: (a) simple routine and repetitive work; (b) no exposure to hazardous environments; (c) only occasionally climbing balancing, stooping, knelling,

5

crouching, or crawling; (d) lifting or carrying a maximum of five pounds at a time; and (e) an ability to sit, stand, or walk at will. A.R. 99. The vocational expert testified that such a person could not perform any of Plaintiff's past work. Id. In addition, the vocational expert said that such a person could not perform any work in the national economy. Id. She testified that a modified sedentary work that offers a sit-stand option provides no opportunity to walk at will, and that the walk at will requirement precluded the hypothetical person from any work in the national economy. A.R. 100.

### C. ALJ Decision

On July 10, 2012, the ALJ issued a decision, concluding that Plaintiff was not disabled from February 4, 2009, through the date of the decision. A.R. 11- 22.

#### 1. Steps One and Two of the Sequential Evaluation

Under the first step of the five-step sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 4, 2009. A.R. 13. At step two, the ALJ found that Plaintiff had four severe impairments that more than minimally affect Plaintiff's ability to perform basic work functions: mild lumbar degenerative changes; status-post fibula fracture; left hip trochanteric bursistis; and an adjustment disorder. A.R. 13.

#### 2. Step Three of the Sequential Evaluation

The ALJ found that Plaintiff "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." A.R. 14. The ALJ found that the medical evidence failed to provide the evidence required for a major dysfunction of a joint to meet or medically equal listing 1.02 of the listed impairments. Id. Next, the ALJ found that Plaintiff's impairment or combination of impairments also did not meet or equal listing 1.03 because she was able to ambulate effectively. A.R. 14. The medical evidence of record did not contain the evidence required to meet or equal listing 1.04 for a disorder of the spine. A.R. 14. In addition, the evidence did not meet or equal listing 1.06 for a fracture of the tibia, pelvis, femur, or tarsal bone(s). A.R. 14-15.

With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff did not meet or medically equal the criteria listing of 12.04. A.R. 15. The ALJ found that Plaintiff had mild to

moderate difficulties in concentration, persistence, or pace. A.R. 15. The decision stated that while her depression interferes with her memory and ability to concentrate, Plaintiff testified that she "could pay attention as long as she needed" and "could follow written and spoken instructions very well." A.R. 15. In addition, the ALJ pointed out that Plaintiff "denied needing reminders to take care of personal needs, grooming, and taking medications." A.R. 15. The decision stated that Plaintiff had no restriction in activities of daily living. A.R. 15. The ALJ emphasized that Plaintiff could drive, run errands, attend doctors' appointments and that her difficulties with cleaning her home and dressing resulted from physical, not mental, limitations. A.R. 15. The ALJ found Plaintiff had no difficulties in social functioning. A.R. 15. She got along with friends and family, and socialized once or twice a week. A.R. 15. The ALJ found that Plaintiff had no episodes of decompensation. A.R. 15. Therefore, the ALJ found that Plaintiff did not satisfy criteria of Paragraph B criteria of listing 12.04 because the medical evidence did not show at least two of the marked limitations or one marked limitation and repeated episodes of decompensation. A.R. 15.

The ALJ also considered whether Plaintiff met the criteria listing of Paragraph C criteria listing of 12.04 and found that she did not. A.R. 16. He stated that the objective evidence showed that Plaintiff had no repeated episodes of decompensation, nor did she have a residual disease process that resulted in such a marginal adjustment that she would be likely to decompensate if even a minimal increase in mental demands or change of environment occurred, nor did she have a history of inability to function outside of a highly supportive living arrangement. A.R. 16.

### 3. Residual Functional Capacity

The ALJ found that Plaintiff retained "the abilities to engage in simple, repetitive tasks equating to unskilled work." A.R. 16. He determined that Plaintiff had the RFC to perform sedentary work, with limitations to: "never climb ladders, ropes, and scaffolding" and "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." Id. The ALJ also found that Plaintiff had medically determinable impairments that could reasonably be expected to cause her alleged symptoms. A.R. 20. The ALJ found, however, that Plaintiff's statements about the "intensity, persistence, and limiting effects of her symptoms" lacked credibility because they

were inconsistent with the RFC assessment.  A.R. 20-1.  For example, the ALJ stated that Plaintiff gave inconsistent reports about use of a cane.  A.R. 21.  He also said that the treatment she received for her hip and back pain "has been essentially routine or conservative in nature" but noted that she lost her health insurance when she lost her job in April 2009.  A.R. 21.

The ALJ gave "great weight" to Dr. Kalman's assessment of Plaintiff.  A.R. 20.  Dr. Kalman opined that Plaintiff had an "adjustment disorder depressed secondary to a medical condition, and dysthymia."  A.R. 20.  Dr. Kalman said that Plaintiff "was able to relate to others, understand and carry out simple one or two-step job instructions, maintain attention and concentration, and withstand stress and pressures associated with daily work activities."  A.R. 20.  The ALJ found that these findings were consistent with the whole record, including Plaintiff's self-reported limitations.  A.R. 20.

The ALJ also gave great weight to the opinion of state agency psychological consultant Dr. Meenakshi and Dr. Mallare.  A.R. 20.  Dr. Meenakshi said in July 2009 that Plaintiff "was able to engage in one to two-step instruction, maintain concentration, interact with others, and withstand stress."  A.R. 20.  In December 2009, Dr. Mallare affirmed Dr. Meenakshi's assessment.  A.R. 20.

### 4. Step Four of the Sequential Evaluation

The ALJ found that Plaintiff was unable to perform any past relevant work, which included cashiering, gas station attendant, apartment cleaner, fast food restaurant crew member, and stocker.  A.R. 21.  The ALJ noted that all of Plaintiff's past relevant work was "exertionally light to heavy work" and she performed her past work as a gas station attendant and cashier "at the exertionally heavy level."  A.R. 21.  The ALJ opined that Plaintiff's RFC was only for sedentary work, so she could no longer perform her past work.  A.R. 21.

### 5. Step Five in the Sequential Evaluation Process

The ALJ determined that "considering the [Plaintiff's] age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  A.R. 21.  The ALJ described Plaintiff as "a younger individual aged 45-49, on the alleged disability onset date," with limited education and the ability to speak English.  A.R. 21.  The ALJ found that transferability of skills was immaterial.  Id.

8

The ALJ found that Plaintiff's non-exertional limitations had compromised her ability to perform work at the "sedentary exertional level," however, Plaintiff's non-exertional limitations "have no effect on the occupational base of unskilled work at all exertional levels." A.R. 22. He stated that while Plaintiff is limited to unskilled work, she "remains able to perform jobs existing in significant numbers in the economy at all exertional levels." A.R. 22. He stated that "a handheld device . . . will not ordinarily erode the unskilled, sedentary occupation base significantly." A.R. 22. He also stated that "postural limitations or restrictions related to climbing ladders, ropes or scaffolds, balancing, kneeling, crouching or crawling would not significantly erode the occupational base for a full range of unskilled, sedentary work." A.R. 22. He concluded that based on her age, education, RFC for sedentary work, and work experience that Plaintiff was not disabled. A.R. 22.

**Legal Standard**

### A.     Standard of Review

According to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether the findings of fact in the ALJ's decisions are premised on legal error or supported by substantial evidence. 42 U.S.C. § 405(g); see, e.g., Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence must be "more than a scintilla" but does not need to rise to a preponderance. Smolen, 80 F.3d at 1279 (quoting Richardson v. Perales, 402 U.S. 389, 402 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson, 402 U.S. at 402).

To determine whether the ALJ's decision is supported by substantial evidence, courts review the administrative record as a whole, weighing both the evidence that supports and conflicts with the ALJ's decision. Sandgate v. Charter, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); Smolen, 80 F.3d at 1279. Where the evidence in the record can support more than one rational interpretation, the ALJ's interpretation must be upheld. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The trier of fact, not the reviewing court, must resolve conflicting evidence, and if the evidence can support either outcome, the reviewing court may not substitute its judgment for the judgment of the ALJ. Burch

1  v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  An ALJ's decision will not be reversed for
2  harmless error.  Id.

### B.     Definition and Determination of Disability

In order to qualify for disability insurance benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The SSA uses a five-step sequential evaluation process in making a determination of disability.  20 C.F.R. § 404.1520; see, e.g., Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  If the SSA finds that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; if the determination cannot be made, then the SSA moves on to the next step.  20 C.F.R. § 404.1520.

First, the SSA looks to the claimant's work activity.  C.F.R. § 404.1520(a)(4)(I).  If the claimant is engaging in substantial gainful activity, she is not disabled.  Id. On the second step, the SSA considers the severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  The claimant must show that she has a severe medically determinable physical or mental impairment (or combination of severe impairments) which has lasted or is expected to last twelve months or end in death.  Id.  Third, the SSA considers whether a claimant's impairments meet or equal a listing in 20 C.F.R. Part 404 Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is deemed disabled.  Id.  Before moving on to the fourth step, the SSA must determine the claimant's RFC, which is an evaluation of the most the claimant can do despite her limitations.  20 C.F.R. § 404.1520(e); SSR 96-8p.  In doing so, the SSA looks to all the claimant's impairments, including non-severe impairments, to determine what physical and mental abilities the claimant has despite her impairments.  20 C.F.R. §§ 404.1520(e); 404.1545; SSR 96-8p.   On the fourth step, the SSA considers the claimant's RFC and past relevant work.  If the claimant's RFC allows her to engage in past relevant work, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Fifth, the SSA considers whether, in light of the claimant's RFC and age, education, and work experience, the claimant would be able to make an adjustment to another occupation in the national economy.  20

1   C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). If the claimant can perform other

2   substantial work in the national economy, the claimant is not disabled. Id.

3   The claimant carries the initial burden of proving disability. See, e.g., Reddick, 157 F.3d

4   at 721. If, however, the claimant establishes at step four that she is unable to perform her prior

5   work, then the burden shifts to the SSA to show at step five that the claimant can perform other

6   substantial work that exists in the national economy. Id.

7   **C.     Credibility**

8   In determining whether a claimant's testimony regarding subjective pain or other

9   symptoms is credible, the ALJ must engage in a two-step process. Lingenfelter v. Astrue, 504

10  F.3d 1028, 1035-6 (9th Cir. 2007). First, the ALJ must determine whether the claimant has

11  submitted objective medical evidence of the underlying impairment "which could reasonably be

12  expected to produce the pain or other symptoms alleged." Id. (citing Bunnell v. Sullivan, 947

13  F.2d 341, 344 (9th Cir. 1991)). Next, if the claimant meets this first step, and there is no evidence

14  of malingering, the ALJ can only reject the claimant's testimony about the severity of her

15  symptoms by offering specific, clear and convincing reasons for doing so. Id. at 1036 (citing

16  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). If the ALJ's credibility finding is

17  supported by substantial evidence in the record, the Court may not second-guess the ALJ's

18  finding. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Morgan v. Comm'r Soc. Sec.

19  Admin., 169 F.3d 595, 600 (9th Cir. 1999).

20  **Discussion**

21  Plaintiff contends that the ALJ's July 10, 2012 decision lacks substantial evidence because

22  the ALJ did not properly evaluate the medical evidence in the record when assessing Plaintiff's

23  mental RFC. She also argues in the alternative that the ALJ committed legal error by not using the

24  services of a vocational expert.

25  **A.     The ALJ did not err in evaluating Plaintiff's mental RFC.**

26  While the ALJ considers opinions from medical sources, the ALJ alone makes the final

27  decision regarding a claimant's RFC. 20 C.F.R. § 404.1527(e)(2). "Where the evidence is

28  susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the

ALJ's conclusion must be upheld." See Thomas, 278 F.3d at 947 (upholding the ALJ's conclusion when supported by a rational interpretation of conflicting medical evidence); Morgan, 169 F.3d at 599. The ALJ resolves any ambiguities in a claimant's medical record. Tommasetti v. Astrue, 533 F.3d 1035, 1041-2 (9th Cir. 2008) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citing Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir.1995) (citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)).

As part of the RFC assessment, the ALJ considers the claimant's exertional (physical) or non-exertional (mental) limitations. See 20 C.F.R. § 416.969a. The ALJ must take into account whether the claimant has a non-exertional limitation based on "difficulty understanding or remembering detailed instructions." 20 C.F.R. § 416.969a(c)(1)(iii). In addition, the Dictionary of Occupational Titles ("DOT") lists requirements for various jobs, including the level of mental reasoning required. See Kellerman v. Astrue, No. 11-4727, 2012 WL 3070781, at *17 (N.D. Cal. July 27, 2012) (citing Meissl v. Barnhart, 403 F.Supp.2d 981, 982 (C.D. Cal. 2005)). The DOT uses a six-point scale to classify Reasoning Levels required for specific jobs. Kellerman, 2012 WL 3070781 at *17 (citing Meissl, 403 F.Supp.2d at 982).

Plaintiff argues that Drs. Kalman and Meenakshi "limited" her to simple one- to two-step instructions, and maintains that the doctors' opinion that she is able to complete one- to two-step job instructions means she is able to do no more than that. Plaintiff argues that because an RFC assesses the most an individual can do despite limitations, the doctors' statements provided affirmative limitations. She further contends that a "limitation to one-to-two step job instructions is a subset within the broad range of unskilled work," and that this limitation erodes the occupational base for unskilled work.

Defendant disagrees with Plaintiff's argument that she was "limited" to one- to two-step job instructions. Defendant points to Dr. Meenakshi's Mental RFC assessment stating that Plaintiff is "able to complete one-two step instructions" (A.R. 412), and to Dr. Kalman's Psychiatric Evaluation stating that Plaintiff is "able to understand and carry out simple one or two step job instructions." A.R. 396. Because the doctors did not affirmatively limit Plaintiff to one-

12

to two-step job instructions, Defendant contends that the ALJ had substantial evidence to support his decision that the medical evidence did not preclude "simple, repetitive work." Defendant further argues that neither doctor opined that Plaintiff would have trouble with performing "simple, repetitive tasks" and that Dr. Mallare opined that Plaintiff had a mental RFC for "simple, repetitive tasks."

Further, the ALJ's RFC also aligned with Plaintiff's mental dysfunction, as reflected in the record as a whole. For example, Plaintiff testified that the medication she took for depression worked effectively. A.R. 48, 91; see also Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that when medications effectively control an impairment, the impairment does not count as a disability for the purposes of SSI benefits). Further, in her self-assessment, Plaintiff reported that she could "pay attention as long as necessary" and that she could follow instructions "very well." A.R. 254, 281. Plaintiff's husband's third-party function report stated that Plaintiff could follow written and spoken instructions very well. A.R. 281, 254. Dr. Meenakshi reported Plaintiff was "moderately limited" in her ability to carry out detailed instructions and "not significantly limited" in her ability to carry out very short and simple instructions. A.R. 410. The ALJ reasonably interpreted the doctor's remarks about one- to two-step job instructions with the other evidence in the record when he made the final determination that Plaintiff's RFC limited her to jobs involving "simple, repetitive tasks." See Wilson v. Astrue, No. 09-1765, 2010 WL 3894679, at *10 (C.D. Cal. Oct. 1, 2010) (finding that a doctor's opinion that a claimant was "able to follow 1– and 2– part instructions" was not a limitation, when read in context with the doctor's full assessment). Thus, substantial evidence supports the ALJ's mental RFC assessment finding that Plaintiff can engage in simple, repetitive tasks.

Further, other courts have found that an ability to perform one- to two-step job instructions is consistent with an RFC for simple, repetitive tasks. See Vang v. Astrue, No. 10-023932012, WL 4468429, at *4 (E.D. Cal. Sept. 26, 2012); Garcia v. Astrue, 2012 WL 530197, at *9-10 (E.D. Cal. Feb. 17, 2012) (holding that the doctor's assessment that the claimant was able to perform one- to two-step instructions "did not limit Plaintiff to one and two step job instructions."); Salas v. Astrue, 2011 WL 2620370, at *6 (E.D. Cal. June 29, 2011) (holding that doctor's opinion that a

claimant "was able to perform one- to two-step job instructions" was not phrased as a limitation, but rather was made as "an affirmative statement of what [the claimant] could do."); Wilson, 2010 WL 3894679 at *9. In Vang, the doctor opined that the claimant "was able. . .to carry out simple one-to-two step tasks" and the RFC formulated for the claimant by the ALJ stated that the claimant could "perform simple, repetitive tasks." Vang, 2012 WL 4468429 at *4. The court held that the ALJ's decision on this issue was proper, reasoning that "the ALJ was entitled to interpret [the doctor's] findings to formulate his RFC, and he was not required to adopt the exact language used by [the doctor]." Id. (quoting Salas, 2011 WL 2620370 at *6). The facts here align with Vang and the other similar district court cases. Plaintiff's doctors did not phrase the one- to two-step job instructions as a limitation, and the ALJ weighed the evidence from the whole record to make a rational determination that Plaintiff retained an RFC for simple, repetitive tasks.

     Even if Plaintiff's doctors intended to opine that Plaintiff had a limitation to one- to two-step job instructions, when the record is evaluated as a whole, this limitation would be consistent with the RFC for simple, repetitive work. Unlike in cases where an explicit limit to one- to two-step job instructions was provided in the record, the record here provides no such limit. Compare Hann v. Colvin, 2014 WL 1382063, at *17 (N.D. Cal. March 28, 2014) (disagreeing with the claimant's argument that one- to two-step job instructions required lower reasoning skills, and finding that a claimant is not precluded from DOT reasoning level two jobs, regardless of whether the claimant was limited to one- to two-step job instructions or to simple repetitive tasks where the limitation was to one- to two-step tasks); with Navarro v. Astrue, 2010 WL 5313439, at *5 (C.D. Cal. Dec. 16, 2010) (reversing the ALJ's RFC assessment limiting claimant to simple work based on physician's opinion that the claimant was limited to simple one- or two- step tasks, reasoning that simple one- to two-step tasks required only a reasoning level of one, whereas simple work encompassed both reasoning levels one and two). This case is more like Hann than Navarro. Plaintiff's limitation was not qualified and an RFC for simple, repetitive tasks is consistent with the record as a whole, regardless of whether Drs. Kalman and Meenakshi offered their assessment as a limitation or a statement of Plaintiff's abilities. In sum, the ALJ's decision that Plaintiff had an RFC for "simple, repetitive tasks equating to unskilled work" is supported by substantial

14

evidence.

**B.     The ALJ erred in failing to consider the vocational expert's opinion.**

A vocational expert testified at the June 26, 2012 hearing that a hypothetical person based on someone of Plaintiff's age, education, work background and vocational limitations could not perform any of Plaintiff's past relevant work or any work in the national economy. A.R. 99. Because it did not appear that the ALJ addressed this aspect of the vocational expert's testimony, the Court ordered further briefing from the parties.

In her further briefing, Plaintiff argued that the hypothetical posed to the vocational expert appeared to encompass Plaintiff's limitations pursuant to her testimony, yet the ALJ found that her subjective complaints were not credible to the extent they were inconsistent with the assessed RFC. A.R. 20-21. Plaintiff argues that the error could be harmless because the ALJ discounted Plaintiff's subjective complaints. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (harmless error where one of the ALJ's reasons supporting an adverse credibility finding was held invalid). However, Plaintiff also argues that because the credibility determination lacked substantial evidence, the hypothetical to the ALJ encompassed Plaintiff's limitations and the Court should find that there was no harmless error for the ALJ's failure to consider the vocational expert's opinion that there were no jobs in the economy for Plaintiff.

Defendant argues that because the ALJ used the Medical-Vocational Guidelines as a framework in evaluating Plaintiff's ability to work (A.R. 21-22), and found that Plaintiff's non-exertional limitations did not significantly erode the occupational base of sedentary unskilled work, it was appropriate for the ALJ to apply the Grids to find that Plaintiff was not disabled. AR 22; 20 C.F.R. pt 404, subpt. P, app.2, Rule 201.18 (directing a finding of not disabled for a younger individual, limited to sedentary work, with limited education and unskilled past work). Defendant argues that because the Grids were applicable, it was unnecessary for the ALJ to rely on the vocational expert's testimony in determining Plaintiff's ability to work. See Hoopai v. Astrue, 399 F.3d 1071, 1076 (9th Cir. 2008) ("However, a vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the

15

1  grid. . . .Instead, an ALJ is required to seek the assistance of a vocational expert when the non-
2  exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to
3  the particular case.").

4  Here, the vocational expert responded to a hypothetical from the ALJ that did not reflect
5  Plaintiff's RFC, which was limited to sedentary work. A.R. 99-100; 20 C.F.R. § 404.1567(a)
6  ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
7  carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as
8  one which involves sitting, a certain amount of walking and standing is often necessary in carrying
9  out job duties. Jobs are sedentary if walking and standing are required occasionally and other
10 sedentary criteria are met."). In particular, the hypothetical assumed an individual limited to
11 lifting and carrying a maximum of five pounds, and the need to alternate sitting, standing and
12 walking at will. A.R. 99. Plaintiff testified as to the lifting and sitting, standing, and walking
13 limitations (A.R. 87-88), but the ALJ improperly discounted Plaintiff's testimony regarding the
14 intensity, persistence and limiting effects of her symptoms as not credible to the extent they were
15 inconsistent with her true RFC as supported by the record. A.R. 20-21.

16 The ALJ identified three bases for his decision to discount Plaintiff's testimony as to the
17 intensity, persistence and limiting effects of her symptoms: (1) inconsistent reports of the use of a
18 cane; (2) the level of care that Plaintiff received; and (3) that Plaintiff received routine and
19 conservative care.  These reasons do not constitute substantial evidence to support the ALJ's
20 credibility determination. First, although the evidence of Plaintiff's use of a cane is inconsistent,
21 this would only account for limitations on standing and walking, not sitting and lifting, which
22 were also discounted. Second, while the ALJ stated that Plaintiff did not receive the care that one
23 would expect a totally disabled person to have received, the ALJ also noted that Plaintiff lost her
24 medical coverage when she lost her job, which could well account for the level of medical care she
25 received in the absence of evidence of another explanation such as her ability to afford medical
26 care or treatment by other doctors unaware of her complete medical history. See Orn v. Astrue,
27 495 F.3d 625, 638 (9th Cir. 2007) ("Orn's failure to receive medical treatment during the period
28 that he had no medical insurance cannot support an adverse credibility finding. We have held that

16

an 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies. But, '[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.'") (internal citations omitted). Third, although the ALJ reasoned that Plaintiff received only routine or conservative care for her symptoms as a basis for discounting her testimony, that level of care could also have been a function of her lack of medical insurance coverage. On balance, the ALJ did not have substantial evidence to discount Plaintiff's testimony about the limiting effects of her symptoms. Thus, the ALJ's failure to evaluate the vocational expert's testimony was not harmless error because the hypothetical was overly restrictive and because the ALJ improperly discounted Plaintiff's testimony.

**Conclusion**

Plaintiff's Motion for Summary Judgment is granted in part and denied in part. Defendant's Cross-Motion for Summary Judgment is granted in part and denied in part. This matter is remanded to the ALJ for further proceedings in accordance with this Order.

**IT IS SO ORDERED**.

Dated: November 6, 2014

ELIZABETH D. LAPORTE
United States Magistrate Judge